## GEORGIA POWER & LIGHT CO. v. GEORGIA PUBLIC SERVICE COMMISSION et al.

District Court, N. D. Georgia.
March 14, 1934.

604

Cook & Harris, of St. Petersburg, Fla., and Wilcox, Connell & Wilcox, of Valdosta, Ga., for complainant.

M. J. Yoemans, Atty. Gen., and J. T. Goree, Asst. Atty. Gen., for defendant.

Before FOSTER and SIBLEY, Circuit Judges, and DEAVER, District Judge.

PER CURIAM.

■ This case came on to be heard upon a motion for an interlocutory injunction before a court composed of Honorable Rufus E. Foster, Circuit Judge (sitting for Honorable Nathan P. Bryan, Circuit Judge, who was absent), Honorable Samuel H. Sibley, Circuit Judge, and Honorable Bascom S. Deaver, District Judge, and was submitted upon the pleadings, the evidence, and argument of counsel. The contention that the order of the Georgia Public Service Commission was arrived at arbitrarily and without due process of law we do not sustain. Opportunity for hearing was afforded, and all evidence presented was considered by the commission. This court has not power to review the proceedings of the commission. We pass to the other question made that the order in its results takes the property of the complainant without due process of law in that it is confiscatory. This question we consider upon the effect of the order under the evidence produced in this court, having little concern with the evidence on which it was reached by the commission. Los Angeles Gas & Electric Corporation v. Railroad Commission, 289 U. S. 287, 53 S. Ct. 637, 77 L. Ed. 1180.

■ The complainant serves several districts in South Georgia near the Florida line, mostly centering around Waycross, Valdosta, and Bainbridge, producing part of its current but buying the most of it from a Florida power company. The largest town served is about 16,000 population. Its lines of transmission run to about 400 miles, and the average density of the business is low. According to complainant's evidence its actual used and useful investment is close to $4,000,000, and for the past six years its net earnings have varied from $225,000 in 1928 through a high point of $289,000 in 1932, to $254,000 in 1933, using round figures. After deducting 3½ per cent. depreciation allowance, the rate of return on the investment has varied from 3.63 per cent. in 1928 to 4.1 per cent. in 1932 and back to 3.59 per cent. in 1933. Salaries have been materially reduced during the period, and none of the expenditures are criticized. During the coming year the company will have to absorb the 3 per cent. federal electric energy tax and under NRA must pay more for operation. The new rates will reduce the net income by $107,275, or about 40 per cent., and the remainder when diminished by the federal tax and NRA expense is estimated to be only $22,094 on a basis of business done in 1933, affording a rate of return of but one-half of one per cent. The commission has given us no specific evidence to the contrary. It contends that because of general conditions the property ought not to be valued so highly, but it has made no estimate of value. If the valuation were even cut one-third and the depreciation rate correspondingly corrected, the return would be far from a fair one. The figures of actual receipts and disbursements are not controverted. Reliance is placed mainly on the fact that the new rates are about the same as those acquiesced in by the Savannah Electric Power Company which serves the city of Savannah, and the Georgia Power Company which serves the remainder of the state, and the consideration that the old rates of complainant would make an unfair discrimination against its territory and are higher than the service is worth to the consumer. These general considerations, while weighty, cannot control, because complainant's property and the use of it cannot constitutionally be taken in order to equalize South Georgia with other sections, nor does the willingness or the ability of the two other power companies to furnish electricity at a certain price prove that complainant could do so with a fair profit. The Savannah Company produces its electricity from imported crude oil, but has no transmission lines and losses, and supplies only a compact city. The Georgia Power Company has a very large territory which contains several large cities, and uses almost wholly hydro-electric power

generated by its own plants. The complainant has to buy the most of its current from Florida at a cost about double the production cost of the two Georgia companies, and then suffers transmission costs and losses to a scattered patronage. Its contract for power is not attacked as unreasonable or capable of being bettered. We judicially know there is almost no water power in South Georgia and Florida. It appears to us clear under the evidence so far produced that the new rates would not only deprive the complainant of a fair return on its property but would disable it to survive long. If complainant's service is costing more than its worth, we see no remedy but for consumers to find a substitute. It cannot constitutionally be compelled by the state without just compensation.

It is therefore considered, ordered, and adjudged that the defendants, their agents and attorneys, be enjoined from enforcing in any manner the order complained of in the petition until the further order of the court, upon the complainant giving bond in the sum of $10,000 to be approved by the clerk of this court, conditioned as required by statute (28 USCA § 382) to pay all damages that may result should it hereafter appear that this injunction ought not to have been granted.